JOSEPH A. WALSH II, State Bar No. 143694
joe.walsh@cwn-law.com
ELLEN E. MCGLYNN State Bar No. 270367
ellen.mcglynn@cwn-law.com
CAROLINE J. WILSON State Bar No. 341286
caroline.wilson@cwn-law.com
COLLIER WALSH NAKAZAWA LLP
One World Trade Center, Suite 2370
Long Beach, California 90831
Telephone: (562) 317-3300
Facsimile: (562) 317-3399

Attorneys for Detained Material Witnesses
RENAN RANA, JED REBALLOS, JAY GEROY, DOMER BELTRAN AND CHRISTOPHER REYES

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE DETAINED MATERIAL WITNESSES RENAN RANA, JED REBALLOS, JAY GEROY, DOMER BELTRAN AND CHRISTOPHER REYES | Case No. **22MC1690**<br><br>**EMERGENCY EX PARTE PETITION FOR RULE 15 DEPOSITIONS OF FOREIGN WITNESSES DETAINED IN THE UNITED STATES AND SUBSEQUENT RELEASE** |
|---|---|

Petitioners Renan Rana, Jed Reballos, Jay Geroy, Domer Beltran, and Christopher Reyes, through their undersigned counsel, petition this Court for an Order compelling the United States to take Petitioners' depositions pursuant to Fed. R. Crim. Proc. 15 in short order so that they may return to their country, home, and be with their families.

## I. REQUEST FOR AN EXPEDITED HEARING

Petitioners respectfully request that this Court hear this petition on an expedited basis so that Petitioners may be allowed to return home to the Philippines. Petitions are foreign nationals who worked as crewmembers of an ocean-going cargo vessel, the M/V DONALD, which arrived in the Southern District of California in May of 2022. Petitioners have had their passport seized by or at the instruction of government agents; are *de facto* detained; and are functionally being held in the jurisdiction without Consular notification or judicial oversight as potential material witnesses in connection with a Department of Justice investigation into a possible shipboard record keeping violation occurring on their vessel. That investigation has now dragged on for nearly six months but has not resulted in any charges. Petitioners have been living in an Airbnb within this District and have been separated from their families and home, with no indications or assurances as to when they will be released and permitted to resume living their lives as they choose. While all Petitioners are desperate to go home and see their families, some of these men have been away from home for a year, and one has never met his child who was born while he was working at sea in January 2022. Due to the sluggish pace of the government, and the fact that Petitioners lengthy detention continues with no end in sight, the continued detention of these men against their wishes is unjust. Each Petitioner has already been interviewed by the government and have been available for depositions for the last five and a half months. Moreover, Petitioners remain willing to return to the United States

2

**EMERGENCY EX PARTE PETITION FOR RULE 15 DEPOSITIONS OF FOREIGN WITNESSES DETAINED IN THE UNITED STATES AND SUBSEQUENT RELEASE**

should the government or the putative target(s) of the investigation find it necessary. Accordingly, Petitioners respectfully request that this Court order Rule 15 depositions and allow Petitioners to repatriate and be with their families and loved ones without further delay. Notice of this Petition has been duly given to attorneys for the government and all interested parties in this matter, pursuant to the Criminal Local Rule1.1 e (21) and Civil Local Rule 83.3(g)(2). (Attached hereto as Exhibits A and B to the Declaration of Attorney Joseph A. Walsh II).

## II. FACTUAL BACKGROUND

For nearly six months, Petitioners Renan Rana (Oiler), Jed Reballos (3/E), Jay Geroy (2/E), Domer Beltran (ETO), and Christopher Reyes (Fitter) (collectively, "Petitioners"), none of whom are citizens of the United States, have been stripped of their passports and detained in the Southern District of California in connection with an investigation relating to a potential record keeping violation on the M/V DONALD ("DONALD" or the "Ship"), upon which each worked as a crewmember.

The Ship was briefly detained by the United States Coast Guard on or about May 31, 2022 for alleged record keeping violations. In order to secure the release of the Ship, the United States required that the Ship owner, Donald Shipping Inc. and operator of the Ship, Interunity Management (Deutschland) GMBH (collectively, the "Companies"), enter into a Security Agreement by which the Companies agreed to post a surety bond and pledge, effectively as human collateral, that certain crew members be taken off the Ship and made available for further investigation and possible testimony. Petitioners are not parties to the Security Agreement. (Attached hereto as Exhibit C to Walsh Decl.).

At the instruction of the government, Petitioners were required to leave their shipboard homes, put their professions and professional advancement on hold, and were (involuntarily) paroled into the country by federal agents. Accordingly, Petitioners have remained detained in the Southern District of California and cannot

leave absent intervention by this Court.[1] All five Petitioners are citizens of the Philippines, and presently are unable to return to their families. Petitioners have been held and will continue to be held in the Southern District under *de facto* house arrest indefinitely while the government's case sits idle. Petitioners are neither targets nor subjects of the government's investigation, and there are no allegations that Petitioners engaged in any alleged criminal activity. Rather, these men have cooperated fully and completely to assist the government by submitting to interviews and are more than willing to continue their cooperation so long as their rights to liberty are respected, and they are treated humanely.

Petitioners, through counsel, file this emergency petition to seek relief from the government's standstill. Petitioners remain willing to return to the United States to testify at trial, provided that their travel, meals, and lodging are paid for. Petitioners do not shy away from their usefulness to the government, but merely request that it be recognized that they are human beings who cannot remain in a foreign country indefinitely, while the lives of their families, friends, and communities continue without them.

A.  *Petitioner Renan Rana*

Mr. Rana has never seen his ten-month-old son. (Declaration of Renan Cabanes Rana ¶11). Mr. Rana began his contract to work on board the M/V DONALD, on or about October 23, 2021 and has been away from his home in the Philippines for well over a year. (Rana Decl. ¶ 4). His son, who is his first and only child, was born in January of 2021 and Mr. Rana's wife has been left to care for their child alone. (Rana

---

[1] If any of the Petitioners demand return of their passports, the United States Attorney will seek arrest warrants and designate such individual(s) as "material witnesses" under 18 U.S.C. § 3144. Petitioners would of course like to avoid the added trauma of being arrested, which would include being hand-cuffed, fingerprinted and held in jail until brought before a Magistrate Judge. Accordingly, Petitioners have declined to formally demand their passports back as this would be an unnecessarily traumatic condition to their current *de facto* detention.

Decl. ¶ ¶ 11-12). Mr. Rana receives frequent calls from his tearful wife where she consistently expresses how much she misses him and wants him to go home. (Rana Decl. ¶ 12). His son has been battling health issues and it pains Mr. Rana that he cannot be there to help his wife care for his only child. (Rana Decl. ¶ 12). As if his situation was not already difficult, Mr. Rana's parents are in poor health. His father is dealing with several personal health issues while also caring for Mr. Rana's ailing mother. Mr. Rana is desperate to go home and help care for his parents. (Rana Decl. ¶ 14). More than anything, like any father, Mr. Rana would like to be home before his son's first Christmas and birthday.

B.  *Petitioner Jed Reballos*

Mr. Reballos is anxious to reunite with his three children and wife. His contract first began on or about April 29, 2022. (Declaration of Jed Reballos ¶ 4). He has been seafarer for approximately twenty-five years, but has never been detained in a foreign country, away from his family, without answers and has never been held against his will. (Reballos Decl. ¶ 2). Understandably, his family remains incredibly worried and confused as to why he cannot come home. (Reballos Decl. ¶ 11). In the seven months since Mr. Reballos has been away, he has missed every single birthday of his three children and is eager to be home for his wife's birthday and of course, Christmas with his family. (Reballos Decl. ¶ 18). Compounding his stress is the fact that Mr. Reballos' father has become very ill in his old age, and Mr. Reballos fears he will not be able to support his father during this critical time. (Reballos Decl. ¶ 16).

C.  *Petitioner Jay Geroy*

Mr. Geroy's contract began in November 27, 2021 which was only for a term of six months. (Declaration of Jay Geroy ¶ 3). But for his detention, Mr. Geroy would have completed his employment contract and returned home in June, 2022. Mr. Geroy should have been home with his family nearly six months ago and instead he is stuck in an Airbnb, living by himself. (Geroy Decl. ¶¶ 3,10). Mr. Geroy has three sons – his youngest son is only six. (Geroy Decl. ¶ 11). During the last year, Mr. Geroy has

5

**EMERGENCY EX PARTE PETITION FOR RULE 15 DEPOSITIONS OF FOREIGN WITNESSES DETAINED IN THE UNITED STATES AND SUBSEQUENT RELEASE**

missed multiple birthdays and holidays, and most importantly, he has been unable to be home and help care for his children. (Geroy Decl. ¶¶ 13,14). He is desperate to go home for the holidays and finally be with his family and celebrate with his native food like adobo and lechon and engage in traditional holiday festivities. (Geroy Decl. ¶ 15).

### D. *Petitioner Domer Balunan Beltran*

Similar to other Petitioners, Mr. Beltran should have been home six months ago. (Beltran Decl. ¶ 3). His contract began in late November of 2021, and he has not been home since. (Beltran Decl. ¶ 4). Mr. Beltran's wife is currently dealing with serious health issues while also caring for her eighty-year-old mother. (Beltran Decl. ¶ 14). Mr. Beltran desperately needs to be home so he can properly take care of his family. And like his fellow crewmembers, Mr. Beltran would like to be home for Christmas after spending a year away from home. (Beltran Decl. ¶ 15).

### E. *Petitioner Christopher Silverio Reyes*

Unfortunately, Mr. Reyes disembarked the ship on June 4, 2022, four days before the other parolees, because he began to feel immense chest pain. (Reyes Decl. ¶ 5). He was rushed to a clinic in El Cajon where the physician told him he was having a heart attack. (Reyes Decl. ¶ 5). The clinic immediately called 911 and Mr. Reyes was rushed to Sharp Grossmont Hospital where he received two stents. (Reyes Decl. ¶ 5). Since his procedure, he has been attending regular follow up appointments with his doctors and relies on his current roommates, the Third Engineer, the Electro-Technical Officer, and the Oiler, to help take care of him. (Reyes Decl. ¶¶ 6, 11). While Mr. Reyes misses his wife and fourteen-year-old daughter very much, his health is his (and his family's) number one priority. Mr. Reyes' current health demands careful consideration. He cannot stay in the United States indefinitely or then only until the government decides they no longer need him. Mr. Reyes fears he will have another cardiac episode and necessarily needs to have a predictable and reliable recovery plan, with a schedule and stability upon which he can rely so he and his health care providers can plan for follow up appointments, medications, repatriation and the possibility of

future treatment.

While each Petitioner has a story that is deeply personal and necessarily different there is a common thread among them - they have all been *de facto* detained in the United States against their wishes for nearly six months while the government has yet to move its case forward. They are not the targets or subjects of the government's investigation. Rather, these men are fathers, sons, and husbands and need to be repatriated immediately. If the government needs to rely on Petitioners for their testimony, Petitioners respectfully request that their depositions be taken and preserved under the Federal Rules of Civil Procedure, Rule 15, and to be set free. Petitioners will continue to cooperate and have agreed to come back to the United States so long as their travel related expenses are covered.

## III. PETITIONERS SHOULD NOT BE DETAINED ANY LONGER THAN NECESSARY TO TAKE RULE 15 DEPOSITIONS

Even where an individual is not formally detained under 18 U.S.C. § 3144, a court may find that the individual is functionally detained as a material witness when their passport has been taken from them and they are compelled to remain in the United States pending trial. *United States v. Maniatis*, No. 07-cr-0024 DLJ, 2007 U.S. Dist. LEXIS 47543, at *3 (E.D. Cal. June 20, 2007). The proposition in *Maniatis* was adopted by Judge Westmore in the Ruling attached as Exhibit "A," wherein Judge Westmore held that the Petitioner, while not formally detained, had his passport taken from him and had been compelled to remain in the Northern District of California and therefore had standing to request a Rule 15 deposition.

Detention prior to a trial implicates significant liberty interests and the process must be done fairly. *United States v. Terrones*, 712 F. Supp. 786, 792-93 (1989). A person is seized if, in view of the surrounding circumstances, a person reasonably believes that they are unable to freely leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Under ordinary circumstances, a party seeking to take a Rule 15 deposition must make a showing of "exceptional circumstances." Fed. R. Crim. P.

Rule 15(a)(1). A material witness however, "need not show such 'exceptional circumstances'" because 18 U.S.C. § 3144 expressly "prohibits detention of material witnesses if their testimony can be secured by deposition." *United States v. Lai Fa Chen*, 214 F.R.D. 578, 579 (N.D. Cal. 2003).

In the present case, there is no doubt that Petitioners have been seized. Like the petitioner in *Maniatis*, Petitioners are, in no uncertain terms, not free to leave. The government has confiscated or caused their passports to be confiscated but has not requested arrest warrants nor deem them material witnesses to purposely attempt to deny Petitioners the rights and remedies afforded by, *inter alia,* 18 U.S.C. § 3144. Petitioners unfairly sit in the Southern District of California in complete limbo, unable to leave. They are not even being afforded the same due process protections afforded to material witnesses.

No material witness may be detained if their testimony can be adequately secured by deposition. 18 U.S.C. § 3144. Under Federal Rule of Criminal Procedure 15(a)(2), a "witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript." As such, it is within the sound discretion of this Court to grant a motion to depose a witness in a criminal matter. *United States v. Mills,* 760 F.2d 1116, 1120 (11th Cir. 1985); *United States v. Ismaili,* 828 F.2d 153, 159 (3rd Cir. 1987), *cert. denied,* 485 U.S. 935, 108 S. Ct. 1110, 99 L.Ed.2d 271 (1988). Federal Rule of Criminal Procedure 15(a)(2) and 18 U.S.C. §3144 expressly contemplate permitting such depositions and subsequent release when requested by a detained party. A court may order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript. Fed. R. Crim. P. 15(a)(2).

The Ninth Circuit has, accordingly, recognized that a material witness may make a motion to request that their deposition be taken, and the district court is empowered

to so order such deposition. *Torres-Ruiz v. United States Dist. Court* 120 F.3d 933, 935 (9th Cir. 1997). Thereafter, the detained witness can be released from custody. *Id*. In coming to its decision in *Torres-Ruiz*, the Ninth Circuit adopted the reasoning of the Fifth Circuit in *Aguilar-Ayala v. Ruiz* (5th Cir. 1992) 973 F.2d 411, reiterating that when "[r]ead together, Rule 15(a) and § 3144 provide a detained witness with a mechanism for securing his own release." *Id*. To implement this mechanism, the witness must file a written motion requesting that they be deposed and demonstrate that their testimony can be "adequately secured by deposition" and that further detention is unnecessary "to prevent a failure of justice." *Id*. Upon such showing, the district court "*must*" order the witness' deposition and prompt release. *Id*. (emphasis in original).

Here, Petitioners do not bear the burden in advocating that they should be deposed, other than to prove a negative — demonstrate that their testimony can be adequately secured by deposition and that their detention is no longer required in order to prevent a failure of justice. Furthermore, a material witness who is not a party, but who advocates for a deposition, need not demonstrate "exceptional circumstances." *United States v. Chen,* 214 F.R.D. 578, 579 (N.D. Ca. 2003).

There is no reason to conclude that Petitioners' presence and ongoing detention in the United States is required. The Petitioners should therefore — at most — be promptly deposed and released so that they may be home with family. If any additional questions arise, the government lawyers may ask them in a subsequent virtual (or in person) videotaped deposition with assistance of an interpreter. Immediate depositions and repatriation serve the interests of justice and in no way prejudice any party. Thus, any concern regarding the confrontation clause is moot, and detention is not necessary to prevent a failure of justice. *United States v. Valenzuela-Bernal,* 458 U.S. 858, 867 (1982); *United States v. Sharif,* 343 F. Supp.2d 610, 616-617 (E.D. Mich. 2004). *See also Aguilar-Ayala,* supra at 419 ("It would be the rare case, indeed, in which the government could establish the inadequacy of the deposition procedure and hence the

potentiality of a "failure of justice.") The Petitioners have been isolated from their families, their country and customs for an extended period. Unless this Honorable Court orders their depositions be taken and release, the government will maintain their detention in perpetuity and continue to prolong its on-going investigation to an indefinite conclusion; all at the unnecessary expense of the liberty and freedom of the Petitioners.

Petitioners respectfully requests that the Court issue an order setting dates for Rule 15 depositions to proceed and allow them to return home.

## V. CONCLUSION

For the foregoing reasons, Petitioners respectfully requests that this Honorable Court Order their depositions be taken promptly pursuant to Fed. R. Crim. Proc. 15 and their subsequent release so that they may return to their country, home, and be with their families.

Dated: November 15, 2022                COLLIER WALSH NAKAZAWA LLP


By:     */s/ Joseph A. Walsh II*
Joseph A. Walsh II
Ellen E. McGlynn
Caroline J. Wilson
Attorneys for Detained Material Witnesses
RENAN RANA, JED REBALLOS, JAY GEROY, DOMER BELTRAN AND CHRISTOPHER REYES